UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
THE CONTINENTAL INSURANCE COMPANY,   Case No:

                     Plaintiff,

   -against-   **COMPLAINT**

SELECTIVE FIRE AND CASUALTY INSURANCE
COMPANY,

                     Defendant,
-------------------------------------------------------------X

Plaintiff The Continental Insurance Company ("Continental"), by its undersigned attorneys, as and for its Complaint against defendant Selective Fire and Casualty Insurance Company ("Selective"), alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) by reason of the diversity of citizenship of the parties and the fact that the amount in controversy exceeds the sum of $75,000 exclusive of costs.

2. At all times hereinafter mentioned, Continental was, and still is, a corporation organized pursuant to the laws of the Commonwealth of Pennsylvania, with its principal place of business in Chicago, Illinois.

3. At all times hereinafter mentioned, Continental was, and still is, an insurance company duly authorized to conduct business in the State of New York.

4. Upon information and belief, at all times hereinafter mentioned, Selective was, and still is, a corporation organized pursuant to the laws of the State of New Jersey, with its principal place of business located at 40 Wantage Avenue, Branchville, New Jersey 45014.

1

5. Upon information and belief, at all times hereinafter mentioned, Selective was, and still is, an insurance company duly authorized to conduct business in the State of New York.

6. Venue is appropriate in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391.

## SUBSTANTIVE ALLEGATIONS

**A.     The Underlying Action**

7. On or about July 17, 2023, Berel Rodal ("Rodal") commenced a lawsuit, entitled <u>Berel Rodal v. Marriott International Inc., JW Marriott Essex House New York, Kohler Co., Humphrey Rich Construction Group, Inc. and Botto Bros. Plumbing & Heating Contractors, Inc.</u>, Index No. 157083/2023, in the Supreme Court of the State of New York, County of New York (the "Underlying Action"), by filing a Summons and Verified Complaint.

8. Rodal, in the Underlying Action, alleges that on December 14, 2022, he was lawfully in the shower of Room 303 at the premises known as JW Marriott Essex House New York, located at 160 Central Park South, New York, New York (the "Premises"), when the glass shower door shattered, causing him injuries (the "Accident").

9. Rodal, in the Underlying Action, alleges that on the date of the Accident, Marriott International Inc. and JW Marriott Essex House New York (collectively, "Marriott") owned, operated, controlled, supervised, managed, and maintained the Premises.

10. Rodal, in the Underlying Action, alleges that prior to the Accident, Marriott retained Humphrey Rich Construction Group, Inc. ("HRCG") as general contractor for a construction and/or renovation project at the Premises that included the installation of glass shower doors (the "Project").

11.     Rodal, in the Underlying Action, alleges that the Accident and his resulting injuries resulted from the negligence of all defendants in the ownership, operation, management, maintenance, supervision, repair and control of the Premises, including the glass shower doors and other bathroom fixtures.

12.     On or about October 19, 2023, HRCG impleaded RDR Construction, Inc. ("RDR") into the Underlying Action by filing a Third-Party Summons and Verified Third-Party Complaint (the "Third-Party Complaint").

13.     HRCG, in the Third-Party Complaint, alleges that it retained RDR as a subcontractor for the Project prior to the Accident by written contract, pursuant to which RDR constructed, framed, maintained, repaired, managed, supervised and controlled the Premises.

14.     HRCG, in the Third-Party Complaint, alleges that on the date of the Accident, RDR was responsible for the construction, framing, maintenance, repair, management, supervision and control of the location of the Accident.

15.     HRCG, in the Third-Party Complaint, alleges that any damages related to the Accident that were allegedly caused by HRCG were caused by RDR's negligent acts or omissions in the construction, framing, maintenance, repair, management, supervision and control of the location of the Accident.

16.     HRCG, in the Third-Party Complaint, asserts causes of action against RDR sounding in contribution, common-law indemnification, contractual indemnification, and breach of contract.

17.     On or about November 3, 2023, Rodal filed an Amended Verified Complaint, adding RDR as a direct defendant (the "Amended Complaint").

18.     Rodal, in the Amended Complaint, alleges that RDR was a subcontractor on the Project and, prior to the Accident, performed work on the Project that included the installation of glass shower doors.

19.     Rodal, in the Amended Complaint, alleges, *inter alia*, that the Accident and his resulting injuries were caused by the negligence of HRCG and RDR in the ownership, operation, management, maintenance, supervision, repair and control of the Premises, including the glass shower doors and other bathroom fixtures.

**B.      The General Contract**

20.     On or about February 10, 2017, SHR Essex House, LLC, as Owner, retained HRCG as general contractor for the Project, identified as "JW Marriott Essex House Guestrooms, Suites & Corridors Renovation".

**C.      The Subcontract**

21.     By written Agreement dated March 24, 2017, and signed by both parties on April 10, 2017, HRCG retained RDR as Subcontractor to perform certain work on the Project (the "Subcontract").

22.     Pursuant to the terms of the Subcontract, RDR agreed to perform all work and furnish all supervision, labor, materials, plans, scaffolding, tools, equipment and supplies necessary for the full and proper construction and completion of certain work on the Project, including Miscellaneous Carpentry; Doors/Frames/Hardware; Metal Framing & Drywall; Miscellaneous Specialties; Suite Conversions- Carpentry & Millwork; Suite Conversions- Metal Framing & Drywall; Suite Conversions- Trenching & Patching; and Suite Conversions- Toilet Accessories.

4

23. Exhibit A to the Subcontract set forth RDR's scope of work on the Project, including (i) under the "Miscellaneous Specialties" scope of work, installation of one hundred forty-six (146) new shower door systems of two different types; and (ii) under the "Suite Conversions- Toilet Accessories" scope of work, installation of twenty-seven (27) new shower door systems of two different types.

24. RDR, in its January 29, 2024, Response to HRCG's Notice to Admit in the Underlying Action, admitted that RDR installed new shower door systems for the Project as specified in Exhibit A of the Subcontract.

25. Section 3 of the Subcontract provides, in part, as follows concerning RDR's insurance procurement responsibilities for the Project:

> 3. <u>Insurance and Performance and Payment Bonds</u>
>
> a. The Subcontractor shall purchase and maintain insurance containing the following types of coverage and limits of liability:
>
> (i) Commercial General Liability (**CGL**) with limits of Insurance of **not less than $1,000,000.00 each occurrence** and $2,000,000.00 Annual Aggregate.
>
> (a) If the CGL coverage contains a General Aggregate Limit, such General Aggregate shall apply separately to each project.
>
> (b) CGL coverage shall be written on an Occurrence form and shall cover **liability arising from** premises, operations, independent contractors, **products-completed operations**, and personal and advertising injury.
>
> (c) **General Contractor**, Owner and all other parties required by the Prime Contract, **shall be included as insureds on the CGL**, using ISO Additional Insured Endorsement CG 20 10 11 85 or an endorsement providing equivalent coverage to the additional insureds for both ongoing and **completed operations**. This insurance for the additional insureds shall be as broad as the coverage provided for the named insured subcontractor. It **shall apply as Primary Insurance before any other insurance or self-insurance, including any**

5

**deductible, maintained by, or provided to, the additional insured**.  (Emphasis supplied.)

\* \* \*

e. The insurance provided, unless otherwise provided above, shall be maintained from the date of commencement of the Work until date of final payment and termination of any insurance required to be maintained after final payment to the Subcontractor. **Subcontractor shall maintain products/completed operations coverage required herein in full force and effect until the applicable Statute of Limitations or Statute of Repose, whichever is longer, has lapsed**. Certificates of insurance acceptable to HRCG shall be filed with HRCG within five (5) days of the execution of this Agreement, and in any event prior to commencement of the Work. The certificates must provide that no coverage can be cancelled or allowed to expire until at least thirty (30) days after prior written notice has been given to HRCG. **The certificates must name HRCG**, the Owner, and such other parties as are required by the Prime Contract **as additional named insured parties on a primary basis**.  (Emphasis supplied.)

26.  Upon information and belief, RDR complied with its obligations under the Subcontract, in part, by obtaining general liability and umbrella insurance from Selective.

**D.   The Selective Policy**

27.  Upon information and belief, Selective issued a general liability insurance policy, No. S 220315701, to RDR as Named Insured, which was in effect on December 14, 2022, with limits of $1 million for each occurrence (the "Selective Policy").

28.  Upon information and belief, Rodal, in the Underlying Action, alleges a claim for which HRCG qualifies as an additional insured under the Selective Policy.

29.  Upon information and belief, the Selective Policy provides primary, noncontributory coverage for HRCG for the Underlying Action.

### E. The Continental Policy

30. Continental issued CNA Paramount Policy, No. 60184556665, to HRCG as Named Insured, with a policy period from August 8, 2022 to August 8, 2023, including a CGL Part with an "Each Occurrence" limit of $1 million (the "Continental Policy").

31. The Continental Policy has an applicable excess "Other Insurance" provision for HRCG that provides, in relevant part, that the Continental Policy is excess over "[a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured."

32. The Continental Policy defines "you" as "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy".

33. The Continental Policy's declarations identify HRCG as Named Insured, thus the term "you" in the Continental Policy refers to HRCG.

34. Upon information and belief, based on their respective "Other Insurance" provisions, the coverage provided to HRCG by the Continental Policy for the Underlying Action is excess to the coverage provided to HRCG by the Selective Policy.

### F. The Tenders

35. By letter dated November 13, 2023, Continental tendered the Underlying Action to Selective on behalf of HRCG, requesting that Selective provide additional insured coverage to HRCG for the Underlying Action pursuant to the Selective Policy.

36. By letter dated December 12, 2023, Continental re-tendered the Underlying Action to Selective on behalf of HRCG, again requesting that Selective provide additional

insured coverage to HRCG for the Underlying Action pursuant to the Selective Policy.

37. By letters dated January 25, 2024 and February 7, 2024, Continental again tendered the Underlying Action to Selective on behalf of HRCG.

38. Selective failed to respond to any of Continental's tender letters.

39. Selective has never denied coverage for HRCG under the Selective Policy for the claims alleged in the Underlying Action.

40. Selective has failed and refused to accept Continental's tender on behalf of HRCG.

41. As a result of Selective's breach of its duty to defend, Continental has been forced to provide a defense to HRCG for the Underlying Action.

42. Based on the "Other Insurance" provision in the Continental Policy, the coverage provided by the Continental Policy to HRCG is excess to the coverage provided by the Selective Policy.

## AS AND FOR A FIRST CLAIM FOR RELIEF

43. Continental repeats, realleges, and reiterates each and every allegation contained in paragraphs 1 through 42 of this Complaint as if more fully set forth herein.

44. Although duly and properly demanded, Selective has failed and refused to provide the primary defense to, and acknowledge coverage for, HRCG for the claims alleged in the Underlying Action.

45. Selective has, to date, wrongfully declined to provide coverage to HRCG for the Underlying Action.

46. Continental seeks a determination of its rights with regard to the Selective Policy, including a declaratory judgment that Selective is required to defend and indemnify HRCG

under the Selective Policy, and a declaratory judgment that such coverage applies on a primary basis before coverage under the Continental Policy applies to HRCG for the Underlying Action.

47. Continental has no adequate remedy at law.

## AS AND FOR A SECOND CLAIM FOR RELIEF

48. Continental repeats, realleges, and reiterates each and every allegation contained in paragraphs 1 through 47 of this Complaint as if more fully set forth herein.

49. As a result of Selective's failure to acknowledge that it owes a primary duty to defend HRCG, Continental has been required to pay for HRCG's defense for the Underlying Action.

50. As a result of Selective's failure to acknowledge its primary duty to defend and indemnify HRCG, Continental has incurred substantial attorneys' fees and other costs for the defense of HRCG for the Underlying Action.

51. As a result of the foregoing, Continental is entitled to a money judgment against Selective in an amount equal to what it has incurred and will incur to defend HRCG in the Underlying Action, in an amount to be determined by the Court, plus interest.

**WHEREFORE**, plaintiff THE CONTINENTAL INSURANCE COMPANY demands judgment as follows:

1. On the first claim for relief, a declaratory judgment determining the respective rights and obligations of plaintiff THE CONTINENTAL INSURANCE COMPANY and defendant SELECTIVE FIRE AND CASUALTY INSURANCE COMPANY with respect to their liability insurance coverage obligations for HRCG for the Underlying Action, including a declaratory judgment that Selective is required to defend and indemnify HRCG for the Underlying Action, and a declaratory judgment that such coverage would apply on a primary

basis before coverage under the Continental Policy, if any, applies to HRCG for the Underlying Action;

    2.    On the second claim for relief, a money judgment in favor of plaintiff THE CONTINENTAL INSURANCE COMPANY and against defendant SELECTIVE FIRE AND CASUALTY INSURANCE COMPANY, in an amount to be determined by the Court, plus interest; and

    3.    Granting plaintiff THE CONTINENTAL INSURANCE COMPANY recovery of the costs and disbursements of this action, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
       April 24, 2024

                                                                 /s/ David R. Shyer
                                                       David R. Shyer, Esq. (DS-6506)
                                                       Corporate Litigation
                                                       CNA
                                                       125 Broad Street, Floor 7
                                                       New York, NY 10004
                                                       David.Shyer@cna.com
                                                       (212) 440-2746

                                                       ***Attorneys for Plaintiff***
                                                       ***The Continental Insurance Company***